# DECISIONS

OF THE

# Supreme Court of Florida

JUNE TERM, 1912.

## ADVISORY OPINION TO THE GOVERNOR.

Section 13, of Article IV., of the Constitution does not authorize the Justices of the Supreme Court to render to the Governor at his request an opinion relative to his executive powers and duties in countersigning warrants drawn on the State Treasury for the payment of the expense of the publication of legislative resolutions as proposed amendments to the State Constitution, since such payments may be authorized by a valid statutory appropriation whether the resolution was or was not duly adopted by the legislature as a proposed amendment to the Constitution, and the Justices are not authorized to render to the Governor at his request an opinion as to the effect of statutory enactments.

State of Florida,
Executive Department,
Tallahassee, September 19, 1912.

To the Honorable Chief Justice and Justices of the Supreme Court of Florida:

Gentlemen:

Under Article IV, Section 24 of the Constitution of Florida no money can be paid out of the Treasury except upon an order or warrant countersigned by the Governor, and it is, as I take it, a part of my executive power and

duty to countersign all warrants for moneys which may legally be paid out of the State Treasury.

The Secretary of State is now publishing as legal advertisements at the expense of the State certain matter, copy of which is hereto attached marked "Exhibit A," in certain of the newspapers of this State, said matter being published, as I am informed, in at least one newspaper in each of the forty-eight counties of Florida.

Large expense is being incurred in making such publication, and especially in publishing the third resolution appearing in such published matter. The duty will devolve upon me to countersign or refuse to countersign warrants or orders upon the Treasurer to pay the bills of the publishers for the publication of all of such matter.

No such joint resolution as that set out as the Third Resolution, in the said published matter given above, appears among the statutes and joint resolutions, or resolutions proposing amendment to the Constitution, as compiled under the direction of the Attorney General. No copy of said so-called resolution was ever signed by the Speaker and the Clerk of the House of Representatives, and by the President and the Secretary of the Senate, or by any of them; and no such signed copy is on file with the Secretary of State, or is in existence or ever has been in existence.

I find from the Journals of both the Houses of the 1911 session of the Florida Legislature that a measure, bearing the designation of House Joint Resolution No. 222, was introduced into the House of Representatives bearing a title similar to that of this third so called Resolution published in the newspapers except that the title, as it appears in the House Journal, commences with the words "A Joint Resolution," while these words do not appear in the title of the so-called Resolution published in the

newspapers, and the former has the words and figures "Article II (2)" where the words "Article Three (3)" appear in the latter—(House Journal page 283); that the said measure after being amended in several particulars, but not in the matter of title, passed to its third reading and, when put upon its passage, failed to pass by a vote of 37 for to 24 against its passage, (House Journal page 1362); that afterwards, upon a motion to reconsider the vote by which the said measure failed to pass, the said vote was reconsidered, and the said measure was put upon its passage again and three-fifths of all the members elected to the House of Representatives voted for it, and it was spread in full on the Journal with the Yea and Nay vote; that the said measure as it there appears upon the Journal of the House has the words and figures "Article Three (3)" instead of "Article II (2)" as it originally appeared in the title and also has the enacting clause provided by the constitution for a law, that is to say "Be it enacted by the Legislature of the State of Florida" (House Journal page 1505); that the measure was certified to the Senate; that in a message from the House to the Senate certifying certain measures which had passed the former body appears one designated "House Joint Resolution No. 222" which said measure is set out in full in such mesage; that in such message the measure there set out instead of bearing the enacting clause "Be it enacted &c," as did the measure which was spread upon the Journal of the House and passed the House, in lieu thereof bears the words "Be it resolved by the Legislature of the State of Florida" (Senate Journal page 1185); that in other respects the measure seems to be identical with that which passed the House; that the said measure was substituted for a measure which was pending in the Senate designated as Senate Joint Resolu-

tion No. 216 and said Senate Joint Resolution No. 216 was withdrawn; that the said measure under the designation of House Joint Resolution No. 222 came to its third reading in the Senate; that upon its third reading said measure was spread upon the Journal of the Senate in the form in which it was contained in the meassage from the House but differing from the measure spread upon the Journal of the House, and which passed the House, in the enacting clause, in the latter the enacting clause being, "Be it enacted by the Legislature of the State of Florida" while in the former appears the resolving clause "Be it Resolved by the Legislature of the State of Florida" (Senate Journal page 1250) ; that upon its third reading a Yea and Nay vote 'which was also entered upon the Journal was taken, and that three-fifths of all members elected to the Senate voted for it, and it was certified to the House; that within the time allowed by the rules of the Senate and in accordance with the rules of the Senate, a motion to reconsider said measure was duly made; that said measure was recalled from the House and sent back by the House to the Senate; that the said motion to reconsider the vote whereby said measure had passed the Senate was adopted May 29, 1911; that the adoption of said motion to reconsider was immediately followed by motion duly adopted making the consideration of the measure itself a special order for the next day, May 30th, at 9:30 o'clock, which last two facts appear from the entry of the Journal of the Senate (pages 1497 and 1498) in the following language:

"The motion, the vote by which House Joint Resolution No. 222 passed the Senate.

"Was taken up.

"Mr. Calkins raised the point that House Joint Resolu-

tion No. 222 having been passed by three-fifths of all the members elected to each House, and the Yeas and Nays having been entered upon their respective Journals, the Senate can not now reconsider their vote whereby said Joint Resolution was agreed to by the Senate.

"Mr. Calkins moved that the motion to consider House Joint Resolution No. 222 be tabled.

"Upon which a Yea and Nay vote was demanded.

"The roll was called and the vote was:

"Yeas—Mr. President, Senators Calkins, Carney, McLeod, McMullen, Stokes, Williams—7.

"Nays—Senators Adkins, Baker, Cook, Culpepper, Davis, Dayton, Finlayson, Flournoy, Henderson, Hosford, Hudson, Humphries, Johnson, L'Engle, Malone, McCreary, Miller, Perkins, Wilson, Withers, Zim—21.

"So the motion to reconsider was not laid on the table.

"Also—

"The question recurred upon the reconsideration of the vote by which the resolution passed the Senate.

"A yea and nay vote was demanded.

"The roll was called and the vote was:'

"Yeas—Senators Adkins, Cook, Davis, Dayton, Finlayson, Flournoy, Henderson, Hosford, Humphries, Johnson, L'Engle, Malone, McCreary, Miller, Perkins, Wilson, Withers—16.

"Nays—Mr. President, Senators Baker, Broome, Calkins, Carney, Culpepper, Hudson, McLeod, McMullen, Sloan, Stokes, Williams, Zim—13.

"So the motion to reconsider was agreed to.

"Mr. Calkins moved that the consideration of this House Joint Resolution No. 222 be made an order for tomorrow.

"Mr. Flournoy moved to amend the motion by making

House Joint Resolution No. 222 be made a special order for 9:30 tomorrow, Tuesday, May 30.

"Which was agreed to."

On the next day's Journal (page 1548) appears the following entry:

"The motion to reconsider the vote by which House Joint Resolution No. 222 passed the Senate.

"Was taken up.

"Mr. Calkins moved that the further consideration of the motion to reconsider the passage of House Joint Resolution No. 222 be deferred, subject to call.

"Which was agreed to."

No motion to reconsider the vote whereby such measure passed the Senate appears ever to have been made other than the one which appears to have been adopted in the entry above given, from Pages 1497 and 1498 of the Senate Journal. No action was taken on the special order for May 30th, at 9:30 o'clock, unless the entry on page 1548 above given is a clerical error and should read that consideration of the measure itself was deferred subject to call. That said measure was never put upon its passage after the motion to reconsider the vote was adopted. No further action appears ever to have been taken by the Senate or any of the officers thereof or by the House of Representatives, or the officers thereof, upon the said designated House Joint Resolution, No. 222.

I, therefore, have the honor under Article IV, Section 13 of the Constitution of Florida to request your opinion as to the interpretation of Article XVII Section 1 of the Constitution upon the question whether, upon a correct interpretation thereof, in the light of the facts above set forth, together with the first clause of Article III, Section 6 and the last clause of Article III, Section 17 as

amended, said House Joint Resolution No. 222 should be published in the newspapers of the State as a proposed amendment to the Constitution, as the same seriously affects my executive power and duty in the matter of countersigning the order or warrant which shall be drawn to pay the expese so incurred.

I have the honor to remain,

Very respectfully,

ALBERT W. GILCHRIST,

Governor.

EXHIBIT "A"

NOTICE OF ELECTION.

WHEREAS, The Legislature of 1911, under the Constitution of 1885, of the State of Florida, did pass three Joint Resolutions proposing amendments to the Constitution of the State of Florida, and the same were agreed to by a vote of three-fifths of all the members elected to each house; that the votes on said Joint Resolutions were entered upon their respective Journals, with the yeas and nays thereon, and they did determine and direct that the said Joint Resolutions be submitted to the electors of the State at the General Election in November, 1912.

Now, therefore, I, H. Clay Crawford, Secretary of State of the State of Florida, do hereby give notice that a

## GENERAL ELECTION.

will be held in each county in Florida on Tuesday next succeeding the first Monday in November, A. D. 1912, the said Tuesday being the .

## FIFTH DAY OF NOVEMBER,

for the ratification or rejection of the said Joint Resolutions proposing amendments to the Constitution of the State of Florida, viz:

---

A JOINT RESOLUTION Proposing an Amendment to Article V of the Constitution of the State of Florida Relative to the Judiciary Department.

Be it Resolved by the Legislature of the State of Florida, That the following amendment to Article V of the Constitution of the State of Florida relative to the Judiciary Department, to be numbered Section 42 of said Article V, be and the same is hereby agreed to and shall be submitted to the electors of the State at the General Election to be held on the first Tuesday after the first Monday in November, A. D. 1912, for ratification or rejection, to-wit:

Sec. 42. There shall be another Judge of the Circuit Court of Duval County in addition to the Circuit Judge of the Circuit in which said county is situated. Such additional Circuit Judge shall be appointed by the Governor and confirmed by the Senate, and shall hold office for six (6) years, and shall receive the same salary and allowances for expenses as other Circuit Judges, but the same shall be paid by the county of Duval out of the general revenue of said county. He shall have all the

powers and perform all the duties that are or may be provided or prescribed by the Constitution or by Statute for Circuit Judges, and all statutes concerning Circuit Judges shall apply to him. The distribution of the business of the Circuit Court of Duval county between the two Circuit Judges and the allotment or assignment of matters and cases to be heard, decided, ordered, tried, decreed or adjudged shall be controlled or made when necessary by the Judge of said Court who shall have the older commission, in force at the time. Such additional Circuit Judge shall reside in Duval county.

A JOINT RESOLUTION Proposing an Amendment to Article 12 of the Constitution of the State of Florida, Relative to Education, to be Known as Section 17 of Said Article; Providing for the Issuance of Bonds by Special Tax School Districts, for the Exclusive Use of Public Free Schools within such School District, and Authorizing the Levy of a Tax to Create a Sinking Fund for the Payment of the Interest and Redemption of Such Bonds.

Be it Resolved by the Legislature of the State of Florida, That the following amendment to Article 12 of the Constitution of the State of Florida, to be known as Section 17 of said Article, be, and the same is hereby, agreed to, and shall be submitted to the electors of the State at the next General Election of Representatives, to be held in the year A. D. 1912, for ratification or rejection:

Sec. 17. The Legislature may provide for Special Tax School Districts, to issue bonds for the exclusive use of

public free schools within any such Special Tax School District, whenever a majority of the qualified electors thereof, who are freeholders, shall vote in favor of the issuance of such bonds.

Whenever any such Special Tax School District has voted in favor of the issuance of such bonds, a tax not to exceed five mills on the dollar, in any one year, on the taxable property within the district voting for the issue of bonds shall be levied in accordance with law providing for the levying of taxes, to become a fund for the payment of the interest and redemption of such bonds.

---

Proposing Amendments to Sections One (1), Sixteen (16) and Seventeen (17) of Article Three (3) of the Constitution of the State of Florida, Relating to the Legislative Authority of the State of Florida.

Be it Resolved by the Legislature of the State of Florida, That the following Amendments to Section One (1), Section Sixteen (16) and Section Seventeen (17) as amended, of Article Three (3) of the Constitution of the State of Florida, be, and they are hereby, agreed to, and shall be proposed and submitted to the electors of this State for approval or rejection at the next General Election hereafter, that is to say:

Section One (1) of said Article Three (3) shall be amended so as to read as follows:

Section 1. (1) The Legislative authority of this State shall be vested in a Legislature consisting of a Senate and a House of Representatives, and shall be designated, "The Legislature of the State of Florida," but the people reserve to themselves power to propose laws and amendments to the Constitution of the State, and to

enact or reject such laws and amendments at the polls independent of the Legislature, and also reserve at their own option the power to approve or reject at the polls any act, item or section of any act, or resolution, of the Legislature;

(2)    The first power reserved by the people is the Initiative, and twenty, 20, per centum of the legal voters shall have the right to propose any legislative measure, and twenty-five (25), per centum shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measure so proposed;

(3)    The second power reserved is the Referendum and it may be ordered, except as to laws necessary for the immediate preservation of public peace, health and safety, either by petition signed by twenty, 20 per centum of the legal voters, or by the Legislature;

(4)    The percentage of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last General Election for the State officer receiving the highest number of votes cast at such election;

(5)    All petitions submitted under the power of the Initiative shall be known as "Initiative Petitions," and shall be filed with the Secretary of State not less than four, 4, months preceding the date of the election at which the measure so proposed are to be voted upon, and all petitions submitted under the power of the Referendum shall be known as "Referendum Petitions," and shall be filed with the Secretary of State not more than sixty, 60, days after the final adjournment of the session of the Legislature, which shall have passed the measure to which the referendum is applied, the filing of a Referendum Petition against any item, or section of any act, or

resolution, shall not prevent the remainder of such measure from becoming effective;

(6)    Any measure or amendment to the Constitution proposed under the Initiative, and any measure to which the Referendum is applied, shall be referred to a vote of the qualified electors of the State, and shall become a law when approved by a majority of the votes cast thereon, and upon proclamation of the Governor, and not otherwise;

(7)    The veto power of the Governor shall not extend to Initiative or Referendum measures approved by a majority of the qualified electors;

(8)    The reservation of the power of the Initiative and Referendum in this Article shall not deprive the Legislature of the right to repeal any law, propose, or pass any measure, which may be consistent with the Constitution of the State and of the United States.

(9)    The Legislature shall make suitable provisions for carrying into effect the provisions of this Section.

That Section Sixteen (16), of said Article Three (3), shall be amended so as to read as follows:

Section 16.    Each law enacted, whether by the Legislature or by the people under the Initiative, shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title, and no law shall be amended or revised to its title only; but in each case the act, as revised, or section, as amended, shall be re-enacted and published at length.

That Section Seventeen (17), of said Article Three (3), shall be amended so as to read as follows:

Section 17.    Every bill passed by the Legislature shall be read by its title on its first reading in either House,

Advisory Opinion to the Governor.

unless one-third of the members present desire it read by sections. Every bill shall be read on three several days, unless two-thirds of the members present when such bill may be pending shall deem it expedient to dispense with this rule. Every bill shall be read by its sections on its second reading and on its final passage, unless on its second reading two-thirds of the members present in the House where such bill may be pending shall deem it expedient to dispense with this rule. The vote on the final passage of every bill or joint resolution shall be taken by yeas and nays, to be entered on the Journal of each House; Provided, That any general revision of the entire laws embodied in any bill shall not be required to be read by sections upon its final passage, and its reading may be wholly dispensed with by a two-thirds vote. A majority of the members present in each House shall be necessary to pass every bill or joint resolution. All bills of joint resolutions so passed shall be signed by the presiding officer of the respective Houses and by the Secretary of the Senate and by the Clerk of the House of Representatives.

The votes cast in compliance with said proposed amendment, and the canvass declarations and the returns thereof, shall be subjected to the same regulations and restrictions as are provided by law for General Elections in the State of Florida.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the Great Seal of the State (SEAL) of Florida, at Tallahassee, the Capital, this the twenty-fifth day of July, A. D. 1912.

H. CLAY CRAWFORD,
Secretary of State.

In the Supreme Court of Florida,
June Term, A. D. 1912,
Tallahassee, Fla., September 24, 1912.

To His Excellency,
 Albert W. Gilchrist,
  Governor of Florida.

Sir:

Your executive communication of the 19th, inst., requesting an opinion upon the matters stated therein has been carefully considered by the justices of the Supreme Court who are in this City. Mr. Justice Hocker is unavoidably absent from the State.

Section 13 of Article IV of the State Constitution provides that, "The Governor may, at anytime, require the opinion of the Justices of the Supreme Court as to the interpretation of any portion of this constitution upon any question affecting his executive powers and duties, and the Justices shall render such opinion in writing."

The authority of the Justices of the Supreme Court under this section to render an opinion to the Governor at his request is confined to *the interpretation of some portion of the constitution* upon a question affecting the Governor's *executive* powers and duties, and does not authorize an opinion upon a question affecting the executive powers and duties of the Governor in countersigning an order to pay money from the State Treasury that may be authorized by a valid statute. See Advisory Opinion to the Governor, 39 Fla. 397; 50 Fla. 169; 54 Fla. 136; 62 Fla. 4.

The request is, in effect, for an opinion as to whether House Joint Resolution No. 222, relating to an amendment to the State Constitution, that was considered by both Houses of the Legislature at the regular session of

1911, was duly adopted by the Senate within the meaning of the constitution, so as to require the publication of such resolution as a duly proposed amendment to the constitution, and the opinion is requested because such publication seriously affects the executive power and duty of the Governor to countersign warrants drawn on the State Treasurer in payment for the publication.

The terms of the constitution relating to proposed amendments to the constitution and the publication thereof, do not confer any executive powers and duties upon the Governor.

Even though the Senate had never acted at all on the joint resolution, and the publication thereof, as a proposed amendment to the constitution, is not required by law, yet a valid statutory appropriation of money to pay for such publication may authorize the Governor to exercise his constitutional power and duty to countersign an order or warrant drawn in accordance with such statutory appropriation. Therefore the power and duty to countersign an order or warrant to pay for such publication would depend not upon the constitution but upon the statutory appropriation; and the Justices of the Supreme Court are not authorized to render to the Governor at his request an opinion upon statutory enactments that affect his executive powers and duties.

In the advisory opinion to the Governor 43 Fla. 305, 31 South, Rep. 348, the opinion related to the Governor's power and duty in countersigning a warrant for the payment of money from the State Treasury where the attempted appropriation was made by a joint resolution which was held to be not a law within the meaning of section 4 of Article IX of the constitution. No such question is presented here.

For the reasons stated you are respectfully advised that

the Justices are not authorized by the constitution to render to you an opinion upon the question presented.

Very respectfully,

J. B. WHITFIELD,
R. F. TAYLOR,
T. M. SHACKLEFORD,
R. S. COCKRELL,
Justices of the Supreme Court.